May it please the Court, my name is Reed Marcy and I represent the plaintiff, Salma Aghmane. I would like to reserve two minutes for rebuttal, please. The parties in this case made cross motions for summary judgment on plaintiff's defamation and blacklisting claims. Almost all of the key facts are undisputed, so the issue here is the legal lens through which to view these undisputed facts. The trial court found a reasonable jury could decide that the bank's representation that had conclusive evidence of criminal wrongdoing by the plaintiff was false, but found that no reasonable jury Well, is that the standard? With respect to the, there's two prongs. There's the falsity prong and there's the malice prong. With respect to the falsity prong, the trial court agreed with the plaintiff that, yes, a jury could find this representation was false. Turning to the malice prong, which is where plaintiff contends the trial court erred, the question is, did the bank know that the representation was false when it made it? So if the So it's more than the standard you articulate. I mean, as to the question I'm raising, the first standard you articulated seemed to touch only the first base and not the second. It's the second base that gives us trouble here or caused the district court to reach the decision that it did. I mean, it's not enough to prove that, excuse me, the bank was incorrect in the decision that it made. You've got to establish the bank, in effect, knew that it was incorrect or didn't give a darn. Yes, and it's important, Your Honor, to look at exactly what the representation is when asking that question. The representation here is a peculiar one that you don't find in any of the other cases. It's not we believe plaintiff committed criminal wrongdoing. It's we have conclusive proof that the plaintiff committed criminal wrongdoing. And is it the word conclusive? It's What if it were just evidence of? Would that be a different case? That would be a different case. And it's important to look at the reasons why we have this peculiar representation in this case. Early warning system, and it's undisputed, the bank does not dispute, early warning system has requirements that must be met in order to list a person on EWS. And that requirement is an admission of criminal wrongdoing or conclusive evidence of criminal wrongdoing. Now, that has two prongs. One prong that you mentioned is the criminality part, and the other prong is the conclusive evidence part. We contend that the bank had neither and knew it had neither. But focusing on the conclusive evidence part. Is it really that it knew or that it was so reckless as to have the proper state of mind? Do we have to consider state of mind here? We do, don't we? You do. Once you look, the trial court concluded that the bank's representation was false. And I think it's important to walk through the steps. And if I walk through the steps, I think I'll answer your question, Your Honor. The bank's representation that it had conclusive evidence was false. When you look at the definition of the word conclusive, the bank argued conclusive means likely to lead a reasonable investigator to conclude, which I think addresses your question, Your Honor. The trial court rejected that characterization and said the plain dictionary meaning of conclusive means putting an end to dispute, especially by means of irrefutability. And the trial court concluded that the representation was false because plaintiff had emphatically refuted the allegations. So now we turn to your question, Your Honor. What was the bank's state of mind when it said- Did she do all but admit? She admitted the facts. No, not exactly. What she admitted she did was make a transfer from her cousin's account to pay her credit card debt. She said that the transfers were authorized by her cousin. And she said her cousin gave her the credentials. They had agreed to all of it over the phone. And she offered to show documentation to prove that the debts were owed and that's what she paid. So that's not what she admitted to. What she admitted to was the policy violation of looking up family member accounts on her work computer. But the EWS reporting requirements strictly state policy violations are not a basis for reporting someone to EWS. And the bank doesn't contend that looking at the accounts while at work was the basis for reporting her to EWS. So if the bank's representation is false, the bank's representation that it has irrefutable evidence is false because plaintiff refuted it. We look at the bank's state of mind at the time that made that representation. Irrefutable evidence even if she refuted it. I mean, even if she disputed it. I mean, it seems to me that your argument does depend in part on what they did when she disputed it. I mean, if she had disputed it and then they had gone in and further investigated her dispute and concluded that she was completely a liar, I assume that would have been good enough. That would go to the second prong of plaintiff's argument, Your Honor, which is not only did the bank have knowledge. I wonder about that. It seems to me that the investigation issue is to some degree embroiled in the conclusive evidence question in the sense that what they did once there was a dispute seems to have something to do with whether there was, in fact, ultimately conclusive evidence or not. That is, if they had, as I said, if they, when they had a dispute and then didn't further investigate, that's one thing. If they had a dispute and they investigated and they found out, for example, that these were fraudulent receipts that she'd given them, then they presumably could have, even if she continued to say the same thing, they still could have had conclusive evidence. There are hypotheticals, we could imagine, where some type of investigation could demonstrate conclusive proof, and using the definition that the trial court used, that the matter was fully resolved and the dispute was over. So the hypothetical Your Honor just offered would be one such hypothetical. The reckless disregard for the truth or falsity of the statement prong, that's one of the hypotheticals. The other hypothetical is that the plaintiff's second argument is shown by the purposeful avoidance of facts line of cases, the Antonovich case, the Hart-Hanks case from the United States Supreme Court. What's the purposeful avoidance here? They decided they had enough, you always stop at some point, when you research a point of law, you stop at some point. How is that purposeful avoidance? That's a good question, Your Honor, and let's look at the timeline. The timeline is, Cousin makes the allegation, bank investigator talks to Cousin and makes some notes, Karen Muth comes on board in January, she reads the investigator's notes, she then has the interview with plaintiff. Plaintiff refutes the allegations. Disputes the allegations. Disputes them, and offers to provide and does provide the documents backing up her explanation of events, and the bank does not investigate that. The bank, three days later, well, the bank fires her the next day, and then three days after that, reports her to EWS. So you could imagine a hypothetical that Judge Berzon And she agrees to pay the money back over time. She agrees to pay the money back and has been paying the money back, and in the document that she provided to Ms. Muth and to her supervisor, Mr. Cipollina, that they signed off on, she explains she had Cousin's permission, it was to repay the debts, she had documents of the debts, she had no intent to cause the bank any loss, and then she executed the repayment agreement to make the bank, put the bank back in status quo ante, so she could resolve her family dispute outside of the bank. But the bank didn't make that representation. The bank didn't say, we looked into it and we believe, the bank said, the matter's concluded, it's proved, it's irrefutable. That's the representation. Well, not irrefutable. And I don't know that conclusive means irrefutable. It means we've concluded and we think this is conclusive. I mean, it seems to me your standard is something we experience in the criminal or somebody reasonably could have reached that conclusion. Well, I'm using the word irrefutable because that was the dictionary definition the trial court adopted. Could there be a hypothetical set of facts where, despite the plaintiff continuing to argue I didn't do it, I didn't do it. We have criminal defendants all the time that are telling us they didn't do it. They may later tell us, as one did to me when I was in law school, prison legal services, about robbing a bank, no way I did it and no way she could have seen my gun. People deny things all the time. Right. You can decide that denial's not accurate. But sticking with your hypothetical, Your Honor, some point during the trial or the dispute, there's the accusation, there's the charges are brought, there's an investigation, there's a trial. But until the verdict comes back, it hasn't been concluded. So I think looking at the timeline here, we have allegation by cousin, some conversation and some notes. Ms. Muth looks at the notes. Ms. Muth talks to the plaintiff. Plaintiff refutes it. And then it stops. And I think that takes us back to just Judge Berzon's point, which is, is that a reckless disregard to stop right there and then say it's concluded? And I think under the Antonovich and Hart-Hanks line of cases that hold that this is one way you can define reckless disregard is when you don't look into it. And if you look at the Antonovich case in particular, you have the incoming L.A. County supervisor saying that his predecessor destroyed 177 boxes of critical files and didn't bother to look in storage where they were. The complaint, the complaining witness is in Morocco. The bank investigator has already spoken to the complaining witness. That person has signed the declaration or affidavit of some kind sufficient to get the bank to pay over to or the 12,000-some in dispute. This is all started by your saying refusal to further investigate. I'm not sure what at that point they're supposed to do. They've got the evidence in front of them. You don't hold the door open forever. They've decided they have enough and they make that conclusion. What makes that purposeful disregard? Because you have only at that point in time, let's look at it as a timeline. At that point in time, you only have one side of the story. You have Cousin's side of the story. You have the investigator talking to Cousin. They've heard from her. What other side is there? Well, then there's Plaintiff's side of the story. And they've spoken to her.  And then they didn't investigate at all after they heard Plaintiff's side of the story. Is her agreement to pay back the 12,000-some, is that a fatal admission? Is that an admission? No, that's merely restoring the bank to the status quo ante. And if you look at the repayment agreement itself, it states that it's not an admission. And then if you look at the document, the so-called voluntary statement document that Plaintiff prepared in front of Ms. Muth, she goes through and clearly doesn't admit to any wrongdoing. She says, I had no intent to defraud the bank. So there's also other evidence that she believed that the only way she would be able to keep her job is if she agreed to repay. So, no, that is not an admission. And how bad does the investigation have to be? Is it grossly inadequate? I don't, I want to not wander over to the notion of whether the investigation is good or bad, because that's where I think the trial court went wrong. For the reckless disregard concept, it's simply not even bothering to look at Plaintiff's side of the story. And if you look, Judge Clifton, to get back to your question, if you look at Ms. Muth's testimony, she doesn't say, I concluded Plaintiff did it. I weighed the evidence and reached a conclusion. She does not say, I made a credibility determination and I believed Cousin and not Plaintiff. And the investigator who spoke to Cousin in Morocco, Mr. Smith, also said, I didn't make any determination that a crime had occurred. That's not my job. I'm not a police officer. What she keeps saying is, I've been reading what Ms. Muth testified to. She said, we have an affidavit from a customer, we know the transactions occurred and the bank has paid and the bank is in a lost position. She keeps saying that. The bank is in a lost position. And that seems to be critical for her. I don't really know. I mean, that's kind of the result of the investigation or the conclusion, but it's not the conclusion. I mean, maybe what she's saying is, well, somebody else had come to this decision because they ended up crediting it and so there must be conclusive evidence. Is that what she's saying? No, I think what she's saying is the fact of the loss and the allegation that the loss was the result of some wrongdoing is good enough. But that's accusation, loss. I'm not even looking into the explanation. What if there is an explanation that justifies it? It was authorized. I'll repay it. My cousin gave me the ID and password and the bank's own policy says when you give somebody your ID and password, all of the transactions are authorized whether you want them or not. That's the bank's online banking policy. So I think, Judge, what your question goes to, what was Ms. Moo thinking? I think her standard for reporting someone to EWS is accusation, lost by bank, that's good enough. But that's not what the EWS standard requires. The EWS standard requires more than that. And why? I mean, let's look at why. You put somebody on that list, the participating banks can't hire that person. And let's look at what happened here. She had been offered the job by Chase. Chase had vetted her. Chase knew she had been terminated for a policy violation. They were going to hire her anyway. And then she shows up on EWS, our offers rescinded just like that. So because it's such a powerful tool, let's call it, EWS requires this very high standard. So reasonable belief isn't good enough. Misunderstanding about what constitutes conclusive evidence isn't good enough. It can't be a policy violation. It can't be a reasonable suspicion that criminal wrongdoing took place. It can't be one customer said it was unauthorized and the other said it was authorized. I'm not going to look into it. Just the allegation is good enough to report her on EWS. That might be a basis to terminate an employee, but it's not a basis to list someone on EWS because of the peculiarity of that requirement, that you can't list someone unless you have conclusive evidence. So this takes us back to your question, Judge Mueller. What was the bank's state of mind? Did the bank know that it had conclusive evidence? It did not. You're actually out of time, but let me ask you one more question. Let's suppose, it's Ms. Moose that you're actually, I mean, whose state of mind you're basically not relying on, is that right? Basically. Others signed off on it, but yes. Let's suppose, I mean, what, in order to meet the malice standard, she would have to have reason to know that what she said wasn't true, right? Yes. Suppose she had a different understanding of the standard, even though a wrong one. I mean, it seems to me that's really what's going on here, because she keeps saying, you know, why did you say that she had conclusive proof? Because the bank is in a lost position. And then she says, in other places, she says, well, there was an affidavit, she submitted the transaction, and the bank was in a lost position. Therefore, there was conclusive proof. That's her understanding, apparently, of what conclusive proof is. How does that fit into the malice standard? Let's say she doesn't understand it. Her understanding of conclusive proof is not what we think conclusive proof means. That's, that would be an interesting hypothetical, because that might take it into the realm of a mistake. What I think is really going on here is that she keeps explaining why she thinks there's exclusive proof, and she says, well, I had these three facts, an affidavit from the, from the customer, she admitted the transaction, the bank's in a lost position, therefore conclusive proof. She says that several different times. She does say that, but here's the reason that that isn't based on the facts of this case. It isn't just that she was wrong about the standard. She testified that she understood what the standard was. Well, except that that's how she understood it. And she wasn't the only person who signed off on it. And plaintiff. That's why I asked you whether you were relying on her. Well, in part. I mean, we're looking at her state of mind, but there were others who also corroborated. And then plaintiff made this appeal through the EWS appeal process. So the bank had another chance to say, Ms. Muth, I think your understanding is, is wrong. You've watered it down, which is the language the trial court used. You're, you're, you're, you're using reasonable suspicion of crime took place, but we can't put somebody on EWS unless we have proof. So show me the proof. Oh, okay. Well, that was a mistake. I had the rule wrong. But those aren't the facts here. The facts here are she said she understood the rule. The bank said it understood the rule. The bank had a chance to correct itself. The EWS regulations allow you to correct for policy violations. They allow you to take somebody off if you listed them by mistake. So while that would be an interesting hypothetical that she had a mistaken understanding of what the standard was to list somebody, the facts just don't show that. And I don't think a jury could reasonably conclude that no one at the bank who signed off on this understood conclusive evidence of criminal wrongdoing to mean reasonable suspicion of some kind of impropriety. Okay. You're way over time. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. I'm Kim Watterson, and I represent Bank of America, Appley, in this case. I'm going to start my argument in an unusual way, I think, and it's to answer some of the questions that the panel asked, because we see things differently on some very important points, and the record supports our view of things. First, I think it's very important, and perhaps it was just a mistaken statement. The trial court did not find that the statement was false. Instead, the trial court found that there was a fact issue and that question needed to go to the jury. And I think it might be a distinction without a difference, or a distinction with a difference, as we think through this case. In addition, let's make it very clear that the plaintiff in this case did admit the payments that were made to plaintiff's credit card and things along those lines. Well, on her version of events, would there have been conclusive proof of a criminal act? Your Honor, if I may answer the question, this is where the rubber is hitting the road. When it comes to the truth and falsity question, there may be a question, was there, in fact, conclusive proof? In the malice inquiry, the question is, and it's plaintiff's burden, and I'm not just adding words, did she have Let's back up a minute. I'm asking you whether, on the defendant's, on the plaintiff's version of events, it's a preliminary question, would there have been conclusive proof of a crime? Muth believed, and there's more to her testimony, and I'll talk about that, that she did have conclusive proof of a crime, and she had a Also, not what I asked you. On the plaintiff's version of events, i.e., that she was authorized to take this money even though it was against bank policy, would the statement, would there have been conclusive proof of the commission of a crime? I think there would have been proof of a commission of a crime. What's the crime? Yes, Your Honor, it was, because it was an unauthorized, it's mismute. Accepting the plaintiff's version of facts, what criminal offense was committed? She did not have authorization. What crime is that? She said she did have authorization. In Ms. Muth's view, that that was. No, stop. If we accept what the plaintiff said, what crime was committed? Simple question. Identify a criminal offense. It was an unauthorized transaction. And what crime is that? That's theft. How is it not? Why was it unauthorized when she said it was authorized? Whereas. I mean, you're not accepting the hypothetical. I apologize, Your Honor. And I guess that's where the rubber's getting, hitting the road, because we're talking about the malice inquiry. And we're asking a question. Answer this question. If you accept plaintiff's statement as true, was a crime committed? And if so, what was the crime? If it was authorized, Your Honor, there was likely not a crime. That's the answer we were looking for. Thank you. I apologize. There's other argument, but I mean, that's important, because inherent in this is the fact, okay, plaintiff's version is not a crime. If it were, the case would be over. But it's not. And so the question becomes, could the standard set in your brief, could a reasonable person have believed that there was conclusive evidence that a crime had been committed? Well, if you've got a she says versus she says situation, where is the conclusive evidence a crime has been committed? You know, and again, this goes to the point that Judge Berzon made. And what it turns on is, and, Your Honor, I'm not making this up. It's the standards in California law. Even if it turns out that the speaker is wrong, even if it turns out in the way that the plaintiff's statement is true, there is a conclusive evidence that a crime    has been committed. And so the question is, is that my question? Is that my question? Is that my question? Was I asking you about what Ms. Musedatabond was? No. If I wasn't, then why are you answering a question that I didn't ask? I believe I have answered your question, Your Honor, when it comes to if we take plaintiff's version as true, there would not be evidence of a crime. Right. And the next question that Judge Clifton asked was, given that's the case, and given that the cousin said one thing, and Ms. Angeman said something else, and that her version wouldn't be a crime, where was the conclusive proof that there was a crime? What was the conclusive proof? As I understand it, this is what Ms. Musedatabond said. We had an affidavit from the customer. She did the transactions. The bank lost money. And she kept saying that over and over again. Therefore, in my mind, that's conclusive proof. And at one point she said, well, you're a lawyer. You may have a different view of what conclusive proof means. But that's what it means to me. May I add some other things that Ms. Musedatabond said from the record? She said, Ms. Musedatabond, that she had no evidence that they were authorized. That she had a fraud claim. A fraud claim by Ms. D.A., as we're calling the cousin, that was not withdrawn. Well, she had some evidence that they were authorized. She had what Ms. Angeman said, and she had Ms. Angeman's submission of documents that she said demonstrated that she, in fact, made these expenditures on behalf of her cousin. Now, did Ms. Musedatabond look at those documents? Yes. I think she looked at the documents, and it wouldn't have changed her view. And that's why I'll call this Court's attention to McCrory. I think McCrory and King, and if the Court would allow me to explain why, under California case law, even if Ms. Muth was wrong in terms of the Court's view or an ultimate fact-finder's view on whether she had conclusive proof, she believed she had conclusive proof. The McCrory case and the King case. What did she understand conclusive proof to require? She understood, and this is the only thing in the record, and it is the affidavit submitted by the Director of Regulatory Inquiries and Internal Investigations that conclusive proof of wrongdoing means sufficient evidence to corroborate and lead the investigator to reasonably believe that a violation of the law had occurred. We decided because we would decide, I think, that that's wrong. I mean, that's not an ordinary language use of what conclusive proof means. Now, where does that fit into the legal standard? And, Your Honor, this — and maybe this — I wasn't being clear before. Maybe this is where the rubber hits the road. This is exactly why the trial court said there's a fact issue on falsity, that this very well may not be the correct definition of conclusive proof. But the reason why we have cited cases throughout the brief that even if the statement ends out to be false, that doesn't mean that there has been a violation of the conditional privilege or the statement is unprivileged, the reason why I keep referencing the cases or wanted to talk just briefly, because I think it's the question we're ignoring, was there a reasonable belief in the truth of the statement. Well, if somebody says, for example, Joan — you know, Jane Jo is a thief, okay? And she doesn't understand what thief means. She thinks thief means, you know, that you borrowed something from your — I don't know, something that's not a theft. All right? Do we then say, well, she couldn't have had a malice because she didn't know what a thief was? That's the Williams case. That's the Williams case, Your Honor. Someone thought someone was a thief. They thought an employee had stolen money. It turned out that the — there was a criminal investigation, and he was — I'm, again, not listening, okay? The question is, if she speaks in language that has meaning for the world at large, but she has a peculiar understanding of the language, i.e., to her a thief is somebody who takes something from here to there or who knows what, okay? Does that mean that she is not acting with the requisite disregard for malice purposes because she's just using language in a way that nobody else would use it? I see the question that you're asking, Your Honor, and I guess, and perhaps I should, I'm having difficulty agreeing with the premise that what Ms. Muth thought she had in front of her in terms of the various and sundry conversations with D.A. Well, if she thought the standard was substantial evidence, and, in fact, it's not substantial evidence, it's something more like beyond a reasonable doubt, and that's how most people would understand it for purposes of the reputational impact, then where does that fit in the analysis in terms of malice? If she's just got the wrong understanding of what she's saying, she's putting some, in her mind, some sense on the words that no ordinary person would. And I think, Your Honor, that's why we needed to look at her deposition, what she thought she had before, and she's been investigating for 30 years. She had a fraud affidavit signed by a customer. She's probably seen many employees dispute allegations of misconduct, vehemently deny that. She said, for example, she didn't, she said, I've seen employees lie, who are not telling 100% the truth. I'm not saying that Ms. Agmain was not 100% the truth. She said that. So, in other words, she wasn't making a, she did not think she had to make a credibility determination as to whether Agmain's story was true. It appears to me, she thought, that even if it was true, there was conclusive proof because there was an affidavit from the customer, an agreement to the transaction, and the bank lost money. And I think it mattered to her as well, and I think it's reflected in the notes that she reviewed, that the, after several conversations by the pre-invest, the folks that did the initial investigation, that DA did not withdraw the fraud affidavit. Even when DA was told that this was your cousin who made the transfers, DA continued to say that they weren't authorized, and this is in the record, ER. Sotomayor, if she can't say, and she refused to say, that the plaintiff was not telling the truth, then how could she have made a conclusive determination? I think, Your Honor, where the rubber is hitting the road in terms of what Ms. Muth believed and reasonably believed was that she needed in terms of having the type of evidence that would warrant a reporting to EWS. And that's why if I just say the statement does matter, right? It's not just evidence. It's conclusive evidence with significant consequences. I don't disagree with that, Your Honor. And I think, I know I keep answering your questions in the same way, but it still is, Ms. Muth, did she reasonably believe that she had conclusive evidence, the type of evidence that was needed? She might be mistaken about what conclusive evidence means. And that's why. So that's the key legal question, which is interesting. That is, if she's mistaken as to the standard, how does that fit into the question? And, Your Honor, and that's why I keep trying, and I know I keep coming back to this, but I'm going to say this before I sit down. The King and McCrory cases by the California court of appeal deal with this perfectly. You know, McCrory's King starts out by saying this case is not about whether the former employee asked or encouraged the driver to falsify a time card, but whether the employer had an honest, good-faith belief the plaintiff had violated the integrity policy when he violated it. So it's not whether the fact of the matter is true. The McCrory case is very interesting. But none of these cases have this unusual wrinkle of a standard that has an evidentiary requirement in it, which is part of the representation. And I think maybe this is where we were, in all my fault, the court having ships passing in the night. I do not disagree that the statement at issue in this case may be a much more serious statement than somebody didn't come to work on time, for instance. Well, let's take McCrory or whatever. What was the issue with McCrory? The McCrory issue is a failure to cooperate with a sexual harassment violation. All right. And in this case, by the way, I think it's very interesting. The employee kept claiming that he was cooperative, that what was said was false. And the Court said even if the person in Muth's position had been aware of employee's version of the events, employee presents no evidence or reason compelling that the person in Muth's position to have accepted that. So I know this is why the Court feels like I'm not answering the questions. I want to answer the questions and was answering the questions when they dealt with the question of truth or falsity. But the malice definition is something very different. It is whether the speaker had a reasonable belief in the truth of its statement. Now, I understand this Court is pointing out that it's the case that the employee was cooperative. And that's where I pause, because I don't know of any authority that incorporates the fact that the investigator may think that all that's required is reasonable suspicion when, in fact, the standard seems to us to be something higher. Why do we take her word for what the standard is? Well, Your Honor, it's less about taking her word for the standard is, and it's more about applying California's settled laws. Someone can say something that turns out to be flat wrong. You see that in the Noel case. You see it reflected when they're talking about King in McCrory. Case after case after case in California says it could be flat wrong. It could be false. But to be – there's a purpose, a policy purpose underlying this privilege. But this is a disagreement about, if there is one, about the meaning of words. In other words, don't we take the – if this is a defamatory statement, and to the world at large it means X, are we going to let her redefine what it means and say, I didn't think it meant that, I thought it meant something else? And for what I thought it meant, I reasonably believed it. But it's not really what it means, but it's what I thought it meant. I think the best way to answer your question, Your Honor, if I may, and you can tell me when to stop, because I know I've gone over. Going back to the beginning and thinking about why the conditional privilege exists, why the California legislature enacted it, why they enacted it and specifically amended it to say there is a value in the free flow of information when it comes to evaluations of employees. The privilege exists exactly to insulate in those circumstances where a speaker says something on a privileged occasion, even if it turns out to be false, provided that the speaker – well, let me put it this way. The plaintiff has the burden to prove. Whatever it's worth, and maybe it is worth something on summary judgment, we didn't have to prove reasonableness. Plaintiff had to prove that no reasonable person would believe in the truth of the statement, which is why early on I know I kept trying to redefine the question and not answer the question about whether there was conclusive proof. The privilege inquiry is whether no reasonable person would have believed, and I'll ask the Court again to look at Muth's deposition, 105 to – or 102 to 110 in the ER, where Muth talks about what she had, why she believed it was conclusive, and why she believed a crime had been committed. There's no – It's just repetitive, so I don't even need to say it. All right. Thank you very much, Your Honor. And I just ask the Court again. I know I came back with those cases, and I know it's – I don't want to say it's difficult for the Court. It's the intersection, perhaps, between the falsity question and the privilege question. We fully understand that. Thank you very much. Thank you, Your Honors. I would like to answer your question, Judge Berzon. What if Muth just had a mistaken understanding of what conclusive evidence meant? That seems to me to be the case. I mean, I think she really believed what – according to what she understood the standard was. Okay. There's two – I have two responses to that. The first one is found in McGrory's case at page 1540. Unreasonably believed to be true means should have known better. Ms. Muth should have known better. She has 30 years of experience doing this. She also admitted to not reaching a conclusion. There's the plain English language meaning. This isn't the first time the bank has listed someone on EWS. And she wasn't the only person doing this. It's not a case of a mistake by Ms. Muth because that mistake could have been corrected and it hasn't. It's been four years. The bank hasn't taken my client off the EWS list. She appealed. The bank affirmed it. Other people in the bank signed off on it. So if she had a mistaken understanding, she could have corrected it. But she didn't. So her understanding, even if that is her understanding, and I think her testimony, particularly in the sections you cited, Your Honor, shows that she didn't necessarily have a mistaken, good faith, mistaken understanding of what conclusive means. She just thinks an allegation of loss followed by the bank payout reports someone on EWS. That's reckless disregard. And also, to come back to one point that Counsel for the Bank just made, we keep talking about belief in the falsity of the statement. We have to keep coming back to what's the statement here. It's not the statement. I understand that. Yeah, yeah. Thank you very much. Thank you. Thank you both for your argument. The case of Agmeni v. Bank of America is submitted, and we'll go to Canale v. San Francisco Hilton.
judges: Berzon, Clifton, Mueller